PAUL J. CAPALBO and CYNTHIA C. CAPALBO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Capalbo v. Commissioner
Docket No. 7243-76.
United States Tax Court
T.C. Memo 1977-412; 1977 Tax Ct. Memo LEXIS 26; 36 T.C.M. (CCH) 1671; T.C.M. (RIA) 770412; November 30, 1977, Filed Herbert P. Phillips, for the petitioners. W. Terrence Mooney, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $4,993.36 in petitioners' Federal income tax for 1974. The only issue for decision is whether petitioners have established the accumulation and subsequent theft of a $20,000 cash hoard so as to be entitled to a theft loss deduction *27 under section 165. [1]/ FINDINGS OF FACT Petitioners Paul J. Capalbo and Cynthia C. Capalbo were legal residents of Salem, New Hampshire, at the time they filed their petition. Petitioners are cash basis taxpayers, and they filed their joint Federal income tax returns for 1972, 1973, and 1974 with the Andover Service Center, Andover, Massachusetts. Since 1965 petitioner Paul J. Capalbo (hereinafter petitioner) has been a professional jockey, riding thoroughbred horses at numerous racetracks on the east coast. Petitioner received his pay as a jockey by way of check in the porter's room at the racetrack. Petitioner always cashed his checks at a track window on the date of receipt and took the currency to his home. At home he and his wife computed their budget, deposited some of the monies in a checking account to meet their weekly bills and placed certain sums in a strongbox, which was kept in a linen closet at petitioners' home. The amount of money stored in the strongbox was depleted from time to time because of certain purchases made by petitioners. *28 Petitioners kept a running tally of the amount of money kept in the box on a slip of paper which was also enclosed in the strongbox. On October 10, 1974, petitioners' home in Salem, New Hampshire, was burglarized, the house ransacked, and certain items stolen or damaged. Petitioners reported to their insurance company an approximate $23,000 theft and destruction loss. The insurance company allowed $3,026 of petitioners' claim. After petitioner began his profession as a jockey in 1965, he used various banks to save his money. From October 4, 1965, through April 10, 1972, petitioner maintained savings account No. XX-1157, with the County Trust Company, Brewster, New York. From September 6, 1968, through April 10, 1972, petitioner maintained savings account No. XX315, with the Putnam County Savings Bank, Brewster, New York. These accounts were closed approximately 2 months before petitioners were married for the purpose of securing funds to make a downpayment on their home in Salem, New Hampshire. From July 16, 1971, until December 12, 1974, petitioner maintained savings account No. X-X2950, with the Indian Head National Bank, Nashua, New Hampshire. At the end of 1972 and *29 1973, petitioner had $7,191.83 and $7,643.91, respectively, deposited in this account. On December 12, 1974, petitioner transferred $8,201.13 to a new account, No. X2369, at the same bank and has maintained this account until the date of the trial of the instant case. At the end of 1974, petitioner had $8,201.13 deposited in this account. At all times material herein, petitioner also maintained savings account No. XX-XXX7142 with the Columbia Savings and Loan Association, Colorado National Bank (hereinafter Colorado National Bank), Denver, Colorado. This account was set up by a professional jockey guild of which petitioner was a member, and permission was required by petitioner for money to be deducted from his earnings and deposited to this account. Petitioner had approximately $10,000 deposited in the Colorado National Bank savings account at the end of 1972, $5,562.18 deposited at the end of 1973, and $8,704.96 deposited at the end of 1974. Prior to the October 10, 1974, burglary, petitioner Cynthia C. Capalbo opened a business with a capital investment of approximately $10,000. To obtain this amount, petitioner withdrew approximately $5,000 from his Colorado National *30 Bank account and borrowed the rest from his parents and another bank. A Statement of Annual Estimated Personal and Family Expenses (Internal Revenue Service Form 4822) was prepared by petitioner's accountant from information supplied by petitioner for 1974. That statement reflected total expenses of $16,855 for that year. Petitioner's personal expenses for 1972 and 1973 were approximately the same as those for 1974. During 1973, petitioner expended approximately $1,000 for his honeymoon taken in the winter of that year. Also, on March 26, 1973, petitioner purchased a Cadillac automobile for a cash price of $7,080. Petitioner reported taxable income of $28,997 for 1973. On their joint Federal income tax return for 1974, petitioners claimed a casualty loss deduction of $20,170, alleged to be due to theft of a cash hoard in that amount. In his notice of deficiency, respondent disallowed a deduction for the claimed loss. [2]/ OPINION Section 165(a) allows a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise. Section *31 165(c) limits the deduction for losses in the case of individuals to certain special categories. Section 165(c)(3) defines one of these categories as "losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft." A theft loss is allowed only to the extent that the amount of the loss arising from the theft exceeds $100. In the instant case, it is stipulated that a burglary occurred at petitioner's residence on October 10, 1974. However, respondent contends that petitioner has failed to carry his burden of proving the theft loss of $20,000. We agree. First, it does not appear that petitioner could have accumulated the amount alleged to be on hand just prior to the October 10, 1974, burglary. Petitioner contends that the alleged cash on hand of $20,000 was accumulated between 1972 and 1974, with $14,000 of that amount being saved during 1973. But the record shows that during 1973 petitioner had personal expenses of approximately $25,000 (including the purchase of a new car and travel expenses) and reported taxable income of only $28,997. He did not establish any nontaxable receipts. Based on *32 this evidence, we think that it is highly unlikely that petitioner could have saved $14,000 during 1973. Second, even if the accumulation of $20,000 during 1972 through 1974 were theoretically possible, we do not think petitioner has shown that any definite amount was actually stolen. Petitioner testified that the money he received from his activities as a professional jockey was kept in a strongbox along with a piece of paper showing the current balance. He testified that after the burglary he reported a loss to the insurance company in the approximate amount of $23,000 and was allowed approximately $3,000 on his claim. He contends the unreimbursed portion of the insurance proceeds represents the currency stolen. Beyond his self-serving testimony, however, petitioner produced no other evidence to corroborate his bare-boned contention that $20,000 was stolen. His wife, though present at the trial of the instant case, did not testify. The vital slip of paper with the running tally on it was unaccounted for and, if this slip had also been stolen, it is significant that petitioner made only a feeble effort to reconstruct its contents. Also, the insurance report was not introduced *33 into evidence, and we can only guess as to what that report contains. Finally, no police report was submitted to show that the alleged loss of currency was filed with the police at the time of the alleged theft. Without more evidence, we cannot approximate the amount, if any, that may have been stolen at the time of the break-in on October 10, 1974. Third, we think petitioner's testimony is in many respects inconsistent and confusing and therefore lacks the high degree of credibility which is necessary if that testimony, standing alone, is to be used to substantiate the theft loss at issue herein. For instance, petitioner testified that he kept large amounts of cash in the strongbox at his residence because he did not believe in banks. Yet this testimony is contradicted by the fact that he maintained a number of bank accounts from the inception of his profession as a jockey. The evidence reveals savings accounts at two financial institutions in Brewster, New York, a savings account at the Colorado National Bank in Denver, Colorado, and two accounts at the Indian Head National Bank in Nashua, New Hampshire. Each of these accounts was opened after petitioner became a professional *34 jockey in 1965, and each (with the exception of the two accounts in Brewster, New York, which were closed during 1972) showed a substantial balance at the end of 1972, 1973, and 1974, respectively. Also there is no explanation as to why petitioner had to borrow money from his parents and a bank and use interest-bearing savings account funds to set his wife up in business just prior to the October 10, 1974, burglary when he had an alleged sum of $20,000 in his closet at his residence. In conclusion, we find petitioner's uncorroborated testimony to be wholly inadequate to establish any amount stolen from his residence during the October 10, 1974, burglary. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue.
2. /↩ Petitioner, on brief, conceded any amount of the alleged loss in excess of $20,000.